[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 05-11645

_____

D. C. Docket No. 89-00984-CV-KMM

FLORIDA ASSOCIATION OF REHABILITATION FACILITIES,
INC.,
UNITED CEREBRAL PALSY ASSOCIATION OF MIAMI, INC.,
AUGUSTINE CENTER FOR THE LIVING, INC.,
ANN STORCK CENTER, INC.,
SUNRISE COMMUNITY FOR THE RETARDED, INC.,

Plaintiffs-Appellants,

versus

DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES -
STATE OF FLORIDA,
GREGORY COLER,
JOHN C. FARIE,
GARY CLARKE, Assistant Secretary for Medicaid -
HRS,
KINGSLEY ROSS,
PAUL L. FREEDLUND,
CHARLES KIMBER, in his official capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 29, 2008)**

Before TJOFLAT, FAY, and SILER[*], Circuit Judges.

PER CURIAM:

Plaintiffs are the Florida Association of Rehabilitation Facilities, Inc. and several operators of intermediate care facilities for the developmentally disabled ("ICF/DDs"). Nearly twenty years ago they filed suit against the Florida Department of Health and Rehabilitative Services ("FDHR") and several of its officials for failing adequately to reimburse ICF/DDs pursuant to the Boren Amendment, formerly 42 U.S.C. § 1396a(a)(13)(A), a provision of the Medicaid Act that has since been repealed, see Balanced Budget Act of 1997, Pub. L. 105-33, § 4711(a)(1), 111 Stat. 251, 507-08 (1997). On remand from our decision in Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs., 225 F.3d 1208 (11th Cir. 2000) (FARF I), the district court ordered plaintiffs' claims dismissed as moot because, before the court entered final judgment the first time

_____

[*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

around, FDHR had amended its reimbursement rate plan in compliance with the procedure required by Boren's successor statute. Plaintiffs appeal, and we affirm.

**I.**

Our opinion in FARF I details the arduous history of this case. FARF I, 225 F.3d at 1211-16. We now summarize and update that history. Plaintiff ICF/DDs provide 24-hour residential health care and developmental services for low-income Florida residents. In 1989, they filed suit against FDHR and various department officials for adopting reimbursement rate plans that were not "reasonable and adequate," in violation of the Boren Amendment of the Medicaid Act, former 42 U.S.C. § 1396a(a)(13)(A).[1] In 1991, the district court entered a preliminary injunction ordering the defendants, in essence, to comply with the Boren Amendment. FARF I, 225 F.3d at 1211-12.

Effective October 1, 1997, Congress repealed the Boren Amendment and replaced it with a provision that requires states to comply with a notice and

---

[1] Plaintiffs' complaint states three counts. Count I: defendants' ICF/DD reimbursement plans do not "meet the requirements" of "42 U.S.C. § 1396a as more fully set forth above." Count II: defendants irrationally use a different reimbursement formula for skilled nursing facilities than they use for ICF/DDs, in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution. Count III: defendants' reimbursement plans for "cluster facilities" – state-owned facilities operated by private entities – do not comply with the Boren Amendment.

comment procedure when they adopt rate plans for ICF/DDs, in contrast to Boren's substantive standard for such plans. FARF I, 225 F.3d at 1213. On April 11, 1999, after a three-day bench trial, the district court entered final judgment in favor of plaintiffs on their Boren claim and ordered defendants to make changes to their rate plan retroactive to the date of the preliminary injunction.[2] FARF I, 225 F.3d at 1213-15.

On April 23, 1998, defendants moved for reconsideration of that decision on the ground that plaintiffs' Boren claim was moot. Defendants – unbeknownst to the court – had amended their rate plan in an attempt to comply with Boren's successor statute before the court issued its final order. The court denied their motion, and defendants appealed. Id. at 1215-16.

On September 21, 2000, we vacated the court's order because it effectively required Florida to pay retrospective damages, in violation of the Eleventh Amendment. Id. at 1220-21; see Edelman v. Jordan, 415 U.S. 651, 668, 94 S. Ct. 1347, 1358, 39 L. Ed. 2d 662 (1974). We then noted that

> [i]f indeed the State had properly enacted a new post-Boren rate plan by the time of entry of final judgment, then a final order providing prospective relief with respect to the State's Boren-era plan would

---

[2] The court never reached plaintiffs' constitutional claims as presented in Count II of the complaint. Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs., 225 F.3d 1208, 1211 n.2 (11th Cir. 2000) (FARF I).

serve no purpose and that portion of the case – if not the entire case – would be moot.

FARF I, 225 F.3d at 1218. We therefore remanded the case and instructed the district court to "determine, in the first instance whether the new plan complied with the requirements of Boren's successor statute, and if so whether the lawsuit had become moot prior to the entry of judgment in April 1999." Id.

After additional briefing by both parties, the district court, on December 15, 2004, entered an order holding that plaintiffs' Boren claim was made moot by defendants' previous compliance with Boren's successor statute.[3] Plaintiffs filed a

---

[3] The district court declined to consider as beyond the scope of our mandate plaintiffs' allegation that FDHR's new rate plan does not comply with a different subsection of 42 U.S.C. § 1396a – namely § 1396a(a)(30)(A) – and various provisions of the Code of Federal Regulations. The court further noted that "[t]o the extent that Plaintiffs have asserted that Defendants have not complied with 42 U.S.C. § 1396a(a)(30)(A) and other regulatory requirements . . . any such claim would require the filing of a separate lawsuit unrelated to the underlying action." We understand this to mean that the court found that plaintiffs failed adequately to plead a claim under any provision of the Medicaid Act besides the Boren Amendment, § 1396a(a)(13)(A). Plaintiffs argue on appeal that the district court should have considered their allegations that FDHR violated § 1396a(a)(30)(A) and various regulations. We disagree.

The Boren Amendment is the only provision of the Medicaid Act put in issue by the complaint, which alleges that "42 U.S.C § 1396a(a)(13)(A)" provides the basis of federal jurisdiction over plaintiffs' claims" and zeroes in on § 13a(a)(13)(A) throughout the statement of the case. Besides a general allegation that "HRS is required to comply with the requirements of 42 U.S.C. § 1396a, et seq. and Federal regulations promulgated thereunder," the complaint never again even generally mentions the Medicaid statute.

Plaintiffs now try to broaden the scope of their attack by arguing that the complaint in Count I alleges a general violation of every subsection of § 1396a with this statement:

Defendants . . . have deprived Plaintiffs of rights conferred by Federal law, to wit: 42 U.S.C. § 1396a as more fully set forth above and also including, but not by way of limitation, the failure to provide reimbursement rates and/or reimbursement payments and/or a reimbursment plan which meet the

5

timely "Motion for Rehearing and/or Reconsideration,"[4] which the court denied as

presenting no new ground for relief.[5]  This appeal followed.

---

requirements of Federal law for providers operating clusters and the providers
operating other ICF/MR facilities and providing ICF/MR services.

"[Section] 1396a as more fully set forth above" can only reasonably refer to the Boren
Amendment, which is the only part of § 1396a "more fully set forth above" in the complaint.
We therefore affirm the district court's decision not to consider plaintiffs' Medicaid Act
arguments outside the ambit of the Boren Amendment and its successor on the ground that those
allegations are not rooted in the complaint.

[4]  Although plaintiffs labeled the motion as one to alter or amend the court's judgment
under Federal Rule of Civil Procedure 59(e), it appears to be a motion for a new non-jury trial
under Fed. R. Civ. P. 59(a)(1)(B) and simultaneously a motion for relief from a final judgment
under Fed. R. Civ. P. 60(b).

[5]  The motion additionally alleged that the court erred by not considering plaintiffs'
constitutional claim.  The court, in a footnote, dismissed the claim as beyond the scope of our
mandate.  As per supra, note 1, Count II of the complaint alleges that defendants gave better
treatment to skilled nursing facilities than to ICF/DDs in violation of the Equal Protection and
Due Process Clauses of the Fourteenth Amendment.  On appeal, plaintiffs argue that their
constitutional claim was unaffected by our mandate because (1) we did not address it and (2) the
alleged constitutional violation is ongoing and therefore not susceptible to challenge on the
ground of mootness.

Count II alleges scant facts that would provide the basis for a claim and plaintiffs have
not fallen over themselves filling in the blanks on remand.  We issued our mandate in FARF I on
September 1, 2000.  The record on appeal returned to the district court on January 22, 2001.  The
next action that appears on the district court docket is defendants' motion filed on September 30,
2002 to dismiss the whole case for lack of prosecution.  Plaintiffs opposed the motion without
mentioning their constitutional claims.  After a status conference on October 16, 2002, the court
issued an order the next day denying defendants' motion to dismiss for lack of prosecution and
ordering the parties to file memoranda addressing the issue whether "Defendants' post-Boren
plan is not in compliance with the Boren Amendment's successor regulations."  Plaintiffs filed a
memo on January 20, 2004, in which they expressly reserved their constitutional claim:

This Memorandum of Law addresses only the issue of the Defendants' failure to
comply with the Medicaid Act in amending the ICF/DD Rate Plan following
repeal of The Boren Amendment and to assist this Court in its determination of
whether the new Rate Plan complies with the post-Boren Amendment statutory
requirements, as ordered by the Eleventh Circuit Court of Appeals in its remand to
this Court. . . . Neither this court nor the Eleventh Circuit Court of Appeals
reached the constitutional issues raised in Plaintiffs' Complaint on this Court's

6

## II.

Our mandate to the district court was to "determine, in the first instance whether the new plan complied with the requirements of Boren's successor statute, and if so whether the lawsuit had become moot prior to the entry of judgment in April 1999." FARF I, 225 F.3d at 1218.[6]

In 1997 Congress replaced the Boren Amendment with a statutory scheme requiring participating states to "provide . . . a public process for determination of rates of payment for . . . intermediate care facilities for the mentally retarded." 42

---

decision, and therefore the opinion of the Eleventh Circuit was based solely on statutory (Medicaid Act) claims. In the event this Court decides that Defendants have complied with the statutory requirements then Plaintiffs' constitutional claims still must be decided. (internal citations omitted).

On February 17, 2004, defendants filed a responsive memorandum. On December 15, 2004 – without any further briefing on plaintiffs' constitutional claim – the court entered an order dismissing the entire action as moot.

Then, on December 30, plaintiffs moved for reconsideration of the final judgment, arguing that the court ignored their constitutional claim. The motion came more than eleven months after plaintiffs declined to brief the claim, more than four years after our order reversing the district court's judgment in their favor on their Boren claim, more than six years after the district court received scant evidence on the claim at a bench trial and never ruled on it, and more than fifteen years after plaintiffs initiated suit against defendants.

In their motion for reconsideration, and in their brief on appeal, plaintiffs do not allege any facts to support their constitutional claim. They merely assert that they have such a claim and that the court ignored it. Even supposing plaintiffs' constitutional claim was preserved for the district court on remand, we affirm the district court's order dismissing the claim on the ground that plaintiffs abandoned it. Alternatively, we affirm the dismissal of the claim on the ground that plaintiffs failed in the first place to state a claim upon which relief may be granted (Count II of plaintiffs complaint asserts little more than conclusory allegations of irrational treatment by defendants).

[6] We exercise plenary review of mootness determinations. 31 Foster Children v. Bush, 329 F.3d 1255, 1263 (11th Cir. 2003).

7

U.S.C. § 1396a(a)(13)(A) (emphasis added). The provision's subsections require states to follow these steps: (i) publish proposed rates and the methodologies and justification for those rates; (ii) give reasonable opportunity for review and comment on the rates and their methodologies and justifications to "providers, beneficiaries and their representatives, and other concerned State residents"; and (iii) publish the final rates with their methodologies and justifications. Subsection (iv) requires that "in the case of hospitals, such rates take into account . . . the situation of hospitals which serve a disproportionate number of low-income patients with special needs." 42 U.S.C. § 1396a(a)(13)(A)(i)-(iv).

In their brief to us, plaintiffs argue that "[t]he factual record in this case demonstrates that Defendants did not <u>substantively</u> comply with relevant Medicaid Act requirements in amending the Rate Plan following repeal of the Boren Amendment." Appellants' Brief at page 11 (emphasis added). Plaintiffs point to no evidence suggesting that defendants did not comply with the procedural requirements of § 1396a(a)(13)(A) in developing the amended rate plan.[7] Because

---

[7] Plaintiffs make few arguments regarding the procedure employed by defendants in amending the rate plan. The arguments they do proffer consist almost exclusively of allegations that defendants did not go into sufficient detail in the methodologies and justifications published alongside their proposed and final amended rate plan. Plaintiffs do not allege that defendants skipped a step in the § 1396a(a)(13)(A) process, nor that they violated a regulation or official memoranda that fleshes out the details of the notice and comment process required by § 1396a(a)(13)(A). Arguing that defendants' published methodologies and justifications were unsatisfactory – without alleging a misstep in the procedural process – amounts to an argument

8

the basis for this lawsuit – the Boren Amendment – has been repealed, and

defendants complied with Boren's successor statute before the district court

entered final judgment on plaintiffs' Boren claim, the district court's order

dismissing the lawsuit as moot is

**AFFIRMED.**

---

about the substance of the rate plan, which Congress intended to foreclose by repealing the Boren Amendment.  See FARF I, 225 F.3d at 1213.

Plaintiffs attempt to distinguish this case from one in which a federal court upheld a rate plan as complying with Boren's successor statute.  See Am. Soc'y of Consultant Pharmacists v. Concannon, 214 F. Supp. 2d 23 (D. Me. 2002).  We are unpersuaded.  States have flexibility in complying with the procedural bar presented by § 1396a(a)(13)(A); without an allegation that defendants failed to jump over the bar, it does not avail to allege that another state jumped higher.